## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYRANO, INC.,                 )<br>                          )<br>      Plaintiff,         )<br>                          )<br>v.                        )<br>                          )<br>QUOTIUM TECHNOLOGIES, INC.,  )<br>QUOTIUM TECHNOLOGIES, S.A., and  )<br>TECHNOLOGIES, S.A.,       )<br>                          )<br>      Defendants.      )| CIVIL ACTION NO. 05-CV-11558-DPW |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION
### TO QUOTIUM'S MOTION TO DISMISS OR STAY

The Plaintiff, Cyrano, Inc. ("Cyrano"), now known as Vedant, Inc.,[1] hereby submits this memorandum in opposition to Quotium's Motion to Dismiss or Stay pursuant to Fed. R. Civ. P. 12(b)(6), which the Defendants, Quotium Technologies, Inc., Quotium Techologies, S.A., and Technologies, S.A. (collectively, "Quotium"), filed on September 23, 2005.  For the reasons stated below, this Court should deny Quotium's motion.

### INTRODUCTION

Cyrano initiated this action based on issues left open by, and new causes not included in, its counterclaims in the action, Technologies, S.A. and Quotium Technologies, S.A. v. Cyrano, Inc., Civ. No. 02-CV-11416.  That earlier action is still pending in this District before Hon. Joseph Tauro, U.S.D.J., largely because a June 8, 2005 Memorandum in that case expressly subordinated that Court's ruling on cross-motions for relief from default and for contempt to a

---

[1] For the purposes of this motion, and for the sake of consistency, the Plaintiff will refer to itself as "Cyrano."

future decision of the U.S. Patent and Trademark Office ("USPTO") or "a court in the United States" respectively on the issues of the validity and ownership of the "Cyrano®" trademark, and the recognition of decisions of the courts of France on the issues of ownership of the copyrights in certain computer programs and the exclusive rights of Cyrano to sell certain other computer programs in the United States under the "Cyrano" name. Judge Tauro expressly considered the ordinary *res judicata* effects of a default judgment in reserving this subordination. Contrary to the strained reading that Quotium propose, the necessary basis for the reservation is that a subsequent proceeding on these issues is not only possible, but the appropriate way to address the issues.

Cyrano filed this action in this District, expecting the case to be directed, as a related case, to Judge Tauro, and did not attempt to disguise the similarity to its counterclaims in the case pending before Judge Tauro. In fact, this case was directed to Judge Tauro, who could have adopted Quotium's reading of his June 8, 2005 Memorandum, but instead allowed the case to go forward, transferring it to this Court.

Even were the February 25, 2005 dismissal of Cyrano's counterclaims to be given preclusive effect, such preclusion would apply only to the causes of action stated in the counterclaims. Cyrano's complaint in this case alleges that, since the filing of those counterclaims, Quotium have introduced new products in the United States that infringe[2] Cyrano's copyrights on certain computer programs, violate Cyrano's exclusive distribution rights on others, and have engaged in a course of conduct to hide default proceedings from

---

[2] Although the details are not currently known to Cyrano, the unauthorized development of new products based on a copyright owner's work is an infringement of the owner's exclusive right to prepare derivative works. 17 U.S.C. § 106. The copyright owner's exclusive rights also include that of distribution, so that distribution of each new product would be a distinct violation of copyright and of an exclusive distribution agreement  See Stone v. Williams, 970 F.2d 1043, 1049 (2d Cir. 1992) ("[e]ach act of infringement is a distinct harm giving rise to an independent claim for relief"). Thus, neither claim preclusion nor the notion of "splitting claims" applies to Quotium's products introduced in the United States since November 19, 2002, when Cyrano's counterclaims were filed.

unrepresented Cyrano and to hide decisions of the French courts, that they asserted would be dispositive of the other pending action, from the Court.

STATEMENT OF FACTS

Cyrano is a Delaware corporation, located in Newburyport, Massachusetts that distributes computer software that enables users to test, monitor, and optimize their data processing and information management systems.  Complaint at ¶¶ 1, 7.  From approximately 1995 to 2001, Cyrano was affiliated with Cyrano, S.A. (formerly Images Multimedia, S.A.), a French software company, and Cyrano, U.K. (formerly Performance Software Limited), a British software company.  Id. at ¶ 8.  In March 2002, Cyrano acquired Cyrano, U.K.'s assets after the latter company was liquidated.  Id. at ¶ 8-9.  Among the products that Cyrano -- and Cyrano, U.K. before it -- developed, marketed, and sold are "CYRANO Test" and "CYRANO Impact," now called, respectively, Test and Impact.  Id. at ¶ 9.  United States copyright law protects both of these products.  Id.

Since about 1995-1996 until recently, Cyrano had operated using "cyrano.com" as its domain name for its e-mail communications with its clients and "www.cyrano.com" as its website.  Complaint at ¶ 8.  Cyrano, S.A. registered the Cyrano® trademark with the USPTO on July 28, 1998.  Id.  The cessation of Cyrano, S.A.'s business signaled the abandonment of the Cyrano® trademark because Quotium neither used the trademark nor filed an affidavit of use as required under 15 U.S.C. § 1058(a).  Complaint at ¶¶ 31, 66.  Only Quotium, however, were aware of these facts.  Id.  It was not until Quotium dmitted on the record that they have never used the purported registered trademark "Cyrano®" or a common law trademark "Cyrano" that Cyrano became aware of the fact.  Docket No. 143 at 5:7-15.

Under an International Distributor Agreement ("Distributor Agreement") between Cyrano and Cyrano, S.A., as amended in April 2001, Cyrano holds the exclusive license to distribute, use, support, and deal in several software products worldwide, excepting continental Europe, until June 30, 2007.  Complaint at ¶ 10.  These products include three products that Cyrano, S.A. (as Images Multimedia, S.A.) developed:  "CYRANO Workbench ("Workbench")," "CYRANO Production ("Production")," and "OpenSTA."  Id.  OpenSTA was developed from Impact with some Cyrano, S.A. components.  Id.

In June 2001, the Commercial Court of Paris ("Commercial Court") declared Cyrano, S.A. bankrupt and, in October 2001, the Commercial Court ordered its liquidation.  Complaint at ¶ 12.  In March, 2002, the Commercial Court ordered the sale of Cyrano, S.A.'s "tangible and intangible" assets to Defendant Technologies, S.A., which also distributes software.  Complaint at ¶ 11, 13; Civil Action No. 02-11416-JLT, Docket No. 1 (hereafter "Quotium's Complaint") at ¶ 6.[3]  Technologies, S.A. formed Quotium in January 2002 "to pursue opportunities in the growing international market for software that enables users to test, monitor, and optimize their data processing and management solutions."  Quotium's Complaint at ¶ 7.

On May 16, 2002, Technologies, S.A., Quotium, and the Trustee of Cyrano, S.A.'s liquidation entered into a Contract of Transfer of Business Components (the "Transfer Contract"), pursuant to which Quotium was granted intellectual property rights to certain software products belonging to Cyrano, S.A.  Quotium's Complaint at ¶ 15.  Upon information and belief, during negotiations between Quotium and the Trustee, Quotium obtained access to source code for Test, Impact, and OpenSTA that belonged to Cyrano.  Complaint at ¶ 13.  A significant portion of the assets Quotium obtained pursuant to the Transfer Contract included

_____

[3] Hereafter, citations to Civil Action No. 02-11416 will be referred to as "Docket No. __," unless otherwise noted.

Test, Impact, and OpenSTA.  Id. at ¶ 14.  Upon information and belief, Quotium used the Test,

Impact, and OpenSTA code to develop its QuotiumPRO product.  Id.  After obtaining this

contested software, Quotium began to manufacture, distribute, promote, and sell QuotiumPRO

and other products created from Test, Impact, and OpenSTA worldwide.  Complaint at ¶ 16.

Furthermore, Quotium have marketed, distributed, and sold OpenSTA's commercial modules,

DB Monitor and SQL Analysis, Workbench, and Production worldwide, including the United

States, the United Kingdom, and Latin America.  Id. at ¶ 17.

Cyrano objected to the transfer of Test, Impact, and OpenSTA to Quotium and so

submitted a claim of ownership to the Trustee before the execution of the Transfer Contract.

Complaint at ¶ 14; Quotium's Complaint at ¶ 17.  The Trustee then caused this contested

software to be held in a "Logibox" pending proof of ownership.  Complaint at ¶ 15; Quotium's

Complaint at ¶ 17.  Complaint at ¶ 19.  On July 4, 2002, Cyrano filed suit in the Commercial

Court to recover its Test, Impact, and OpenSTA code from the "Logibox" (the "Logibox Case").

Id.

On July 12, 2002, approximately one week later, Quotium filed a Complaint against

Cyrano in the U.S. District Court for the District of Massachusetts, Civil Action No. 02-11416-

JLT.  Complaint at ¶ 19.  Quotium alleged that they had acquired certain intellectual property

rights from Cyrano, S.A.  See generally Quotium's Complaint.  Their Complaint neither asserted

ownership of the "Logibox" contents nor the invalidity of the Distributor Agreement, yet it

assumed the registration of the Cyrano® trademark, and expressly asserted that trademark in

seven of the eleven counts and as a basis for injunctive relief.  Id.; Complaint at ¶ 31.

Cyrano answered Quotium's Complaint and counterclaimed.  Docket No. 38.  On

February 3, 2003, the Court denied Quotium's motion to file an amended complaint.  Complaint

at ¶ 21.  Two days later, Quotium filed a new action in the Commercial Court in France to void

the Distributor Agreement between Cyrano and Cyrano, S.A. (the "Distributor Case").  Id.  On

September 19, 2003, the Commercial Court entered a decision in Cyrano's favor, having found

the Distributor Agreement valid.  Complaint at ¶ 24.  Cyrano's primary counsel from the law

firm of Edwards & Angell had noticed her withdrawal on September 11, 2003, one week before

the Commercial Court's decision.  Id.  Neither party reported the decision in the Distributor Case

to the Court in the U.S. action.  Id.

Quotium appealed the Commercial Court's decision in the Distributor Case to the

Appeals Court of Paris.  Complaint at ¶ 25.  On November 28, 2003, Quotium's U.S. counsel

wrote to Quotium's French counterpart in the Distributor Case appeal as follows:

> "The determination in the French action of whether the Alleged
> Distributor Agreement (as allegedly amended) was extinguished in
> the liquidation of Cyrano, S.A. is of critical importance to
> Quotium's copyright and trademark infringement claims in the
> U.S. action.  A timely appellate court ruling in the French action
> would likely resolve the issues in the U.S. action of whether
> Cyrano, Inc.'s post-Liquidation sale and marketing of Workbench
> and Production constitute copyright and trademark infringement.
> Resolution of those issues would, in turn, spare the parties the risk
> of inconsistent legal rulings in the French and U.S. actions
> regarding the enforceability of the International Distributor
> Agreement and the considerable cost of taking fact discovery in the
> U.S. action concerning the enforceability of the International
> Distributor Agreement (as allegedly amended)."

Docket No. 127, attach. 9 at 2; Complaint at ¶ 25.  The Appeals Court of Paris affirmed the

decision of the lower court in favor of Cyrano.  Complaint at ¶ 29.  However, Quotium's U.S.

counsel failed to inform the U.S. court of that result.  Id.  Indeed, Quotium's U.S. counsel then

argued that the Appeals Court of Paris ruled on non-determinative issues of French law.  See

Docket No. 141 at 6.

On June 19, 2003, Cyrano filed a motion for partial summary judgment, which the Court denied on January 13, 2004. Cyrano also filed a motion to compel production of documents on August 5, 2003, which the Court granted on January 2, 2004. Quotium have never complied with the Court's Order compelling the production of documents. Complaint at ¶ 26.

On December 10, 2003, before decisions issued on Cyrano's motion for partial summary judgment and motion to compel, Edwards & Angell, Cyrano's attorneys, moved for leave to withdraw because Cyrano could no longer pay legal bills as a result of defending the two actions that Quotium filed subsequent to their own action to recover the contents of the "Logibox." Docket No. 92; Complaint at ¶ 22. On February 10, 2004, after a hearing on the matter, the Court granted leave for Cyrano's attorneys to withdraw and ordered Cyrano's Chief Executive Officer, Scott Almeda, who was present at the hearing, to obtain new counsel by March 10, 2004. Complaint at ¶ 27; Docket No. 94. Additionally, the Court scheduled a further conference for March 17, 2004. Docket No. 94.

On March 16, 2004, the day before the scheduled conference, the Commercial Court ruled in favor of Cyrano in the Logibox Case, finding Cyrano's ownership of Test and Impact. Complaint at ¶ 26. Neither Cyrano, which at that time was without counsel, nor Quotium reported the Commercial Court's decision in the Logibox Case to the U.S. court. Complaint at ¶¶ 26, 27. Neither party attended the scheduled conference on March 17, 2004, and the Court dismissed the case. Docket No. 95.

Indeed, Quotium's participation in the U.S. action began to lag around the time of the Commercial Court's ruling in the Distributor Case. See Docket Nos. 90-95. After September 19, 2003, Quotium only next appear on the docket as having attended the February 10, 2004 hearing on Cyrano's counsel's motion to withdraw, and, consequently, were made aware that Cyrano no

longer had counsel. Docket No. 94. On March 22, 2004, Quotium filed an emergency motion to

reopen the case, in which they stated that they "have not been contacted by [Cyrano's] new

counsel or been served with a notice of appearance from [Cyrano's] new counsel." However,

Quotium claim to have served this motion "by hand, upon counsel for the Defendant, Cyrano,

Inc." Docket No. 96. As a result, Cyrano was not made aware of Quotium's motion and, thus,

was not able to file an opposition to it. Complaint at¶ 28.

On June 30, 2004, the Appeals Court of Paris affirmed the lower court's decision in the

Distributor Case.[4] Complaint at ¶ 29. Again, neither Cyrano, still without counsel, nor Quotium

reported this decision to the U.S. Court. Complaint at ¶ 29, 30. Thereafter, Quotium's

participation in this matter again lapsed until October 6, 2004, when it successfully moved for

entry of default, and only after this Court entered an Order requesting status. Docket No. 97.

Although Quotium certified delivery of their motion for entry of default by hand upon Cyrano's

Chief Executive Officer, their transmittal letter to the Court indicated service by mail.

Complaint at ¶ 30; see also Complaint at ¶ 34 (setting forth pattern of Quotium's deceptive

conduct with regard to court proceedings). Moreover, Quotium's motion does not mention any

of the French Judgments. Id.

After entry of default on December 6, 2004, the Court sent a Standing Order to counsel

with a timetable for filing a motion for entry of default judgment and a response. Complaint at ¶

31. Cyrano had no notice of either. Id. On January 27, 2005, the day before the invalidation of

---

[4] Contrary to the suggestions of Quotium at page 17 of its memorandum, Cyrano could not assert the res judicata effects of the French judgments while Quotium's appeals were pending. As Quotium represented to the French Appeals Court that its decision would dispose of the case before Judge Tauro, Cyrano rationally should have directed its limited resources there. As it was, however, contrary to the clearly erroneous adoption of Quotium's argument that Cyrano chose to expend resources in France instead of before Judge Tauro's court (Quotium Memo. at 21, 25), little was required in France during the period after Quotium had submitted its representation to the French Appeals court, and both parties did nothing more in Judge Tauro's court (as a corporate defendant, Cyrano could not appear pro se) until Judge Tauro dismissed the entire case and Quotium moved -- without notice to Cyrano -- to reopen.. Cyrano did not receive notice until January 28, 2005 that there were active proceedings in Judge Tauro's court.

the Cyrano® trademark pursuant to 15 U.S.C. § 1058(a),[5] Quotium filed a motion for entry of default and a motion to dismiss Cyrano's counterclaims. Docket Nos. 105, 107; Complaint at ¶ 31. Although Cyrano's current counsel filed a notice of appearance on February 15, 2005, one day after being retained and after the response time provided in the Standing Order, the Court entered an Order granting Quotium's motions on February 24, 2005, as well as Orders providing for injunctive relief and for default judgment as to liability. Complaint at ¶ 32; Docket Nos. 110-112.

On February 25, 2005, Cyrano filed an emergency motion to lift default judgment, Docket No. 113, and a motion for preliminary injunction to hold in escrow all materials that it was ordered to produce pursuant to the default, pending a final determination of the parties' rights. Docket No. 120. Cyrano's counsel brought the French Judgments to the Court's attention. Complaint at ¶32. After a hearing on April 13, 2005, the Court issued a Memorandum and Order, dated June 8, 2005, denying Cyrano the relief it requested. Docket Nos. 144-145. Although the Court determined that Cyrano, by litigating the French actions, intentionally defaulted in the U.S. action, Docket No. 144 at 9, it also stated as follows:

> ". . . this court understands that a default judgment 'is as conclusive
> an adjudication of the issues for the purposes of res judicata as a
> judgment rendered after trial on the merits.' Yet, as the French
> proceedings and rulings were not considered by this court when
> deciding Plaintiffs' motion for entry of default judgment, this
> court's judgment does not reach the issue of whether Defendant
> may enforce its French judgments after this litigation has ended.
> Moreover, if the USPTO, or a court in the United States which
> decides to enforce the French judgments, determines Defendant's
> rights in a manner that contradicts the provisions of the injunction
> issued in this case, then any conflicting aspects of this court's

---

[5] In yet another example of their slight-of-hand tactics, Quotium, in its memorandum at page 21, suggests this was merely an administrative requirement -- when Congress made clear that after failing to submit an affidavit of use -- the basis for American trademark rights -- there was a six-month grace period (that ended January 28, 2005 in the case of the Cyrano® trademark) and no further recourse.

injunction shall expire and give way to the subsequent tribunal's decision."

Id. at 14.

After filing a notice of appeal of both the February 24, 2005 and June 8, 2005 Orders, Cyrano filed the present Complaint on July 25, 2005, and the matter immediately was assigned to Judge Tauro.  Civil Action No. 05-11558-JLT, Docket No. 1.  Rather than decline the action, Judge Tauro transferred it to this Court.  Civil Action No. 05-11558-JLT, Docket No. 3.

Also on July 25, 2005, the parties appeared in the earlier action before Judge Tauro, who thereafter allowed Quotium's "Third Emergency Motion for Issuance of Order of Contempt Against Defendant" and ordered a fine of "$1,000 a day from July 25, 2005 until it complies with this court's June 8, 2005 Order" and, further, that "[i]f Defendant fully complies with this court's June 8, 2005 Order by September 1, 2005, then Defendant may file a Motion to Vacate the abovementioned fines."  Docket No. 166.

Effective as of August 25, 2005, Cyrano legally changed its name to Vedant, Inc. and relaunched itself under that name on September 1, 2005 with a new website, "www.vedanthealth.com," and an associated domain name.  Docket No. 170 at 3.  On September 30, 2005, the company effected the transfer of the domain name "cyrano.com" to Quotium. Docket No. 178.

ARGUMENT

I.    Standard of Review

The defendant moving for dismissal under Rule 12(b)(6) has the burden of showing "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Hughes v. Rowe, 449 U.S. 5, 10 (1980).  The court must accept as true the plaintiff's factual allegations, Albright v. Oliver, 510 U.S. 266 (1994), and draw all reasonable

inferences in the plaintiff's favor.  Sanner v. Chicago Bd. of Trade, 62 F.3d 918, 925 (7th Cir.

1995).

II.    There Is No Preclusive Effect To The Final Judgment In The Earlier Action Because The
       Court There Expressly Reserved Cyrano's Right To Enforce The French Judgments And
       To Maintain Its Application Before The USPTO.

The federal law of res judicata, sometimes referred to as claim preclusion, provides that a

final judgment on the merits precludes the same parties from relitigating claims that were, or

could have been, raised in that action.  Apparel Art Int'l v. Amertex Enters., 48 F.3d 576, 583

(1st Cir. 1995) (citations omitted).  This doctrine prevents claim splitting.  Id.  However,

"[u]nder a generally accepted exception to the res judicata doctrine, a litigant's claims are not

precluded if the court in an earlier action expressly reserves the litigant's right to bring those

claims later in a later action."  Id. at 586 (citing Kale v. Combined Ins. Co. of America, 924 F.2d

1161, 1165 (1st Cir. 1991); Restatement (Second) Judgments § 26(1)(b) (1982) (providing that

the general rule of claim preclusion does not apply where "[t]he court in the first action has

expressly reserved the plaintiff's right to maintain the second action."

Moreover, "[a] judgment that expressly leaves open the opportunity to bring a second

action on specified parts of the claim or cause of action that was advanced in the first action

should be effective to forestall preclusion."  18 Wright, Miller & Cooper, Federal Practice and

Procedure:  Jurisdiction 2d ("Wright") § 4413 at 313.  A court, thus, has the authority to limit the

scope of its decision to defeat later arguments for preclusion.  Wright § 4413 (2005 Supp.)  One

of the reasons for this authority is to afford redress to a party who comes to court prepared to

prove a claim on one theory but not aware of another theory that is only revealed later.  Wright §

4413 at 313.  Finally, "[b]ecause the doctrine of res judicata is grounded upon considerations of

fairness and efficient judicial administration," a court may refuse to apply the doctrine where

these interests are not served and despite the satisfaction of the technical requirements for the

doctrine.  Chestnut Hill Dev. Corp. v. Otis Elevator Co., 739 F.Supp. 692, 697 (D. Mass. 1990).

Clearly, Judge Tauro intended to preserve Cyrano's right to enforce the French judgments

and to perfect its rights to the Cyrano® trademark.  Quotium argue that Judge Tauro, in his June

8, 2005 Memorandum, does not support Cyrano's right to bring a new action because the Court

did not "reach the issue of whether Defendant may enforce its French judgments after this

litigation is ended."  However, Judge Tauro, expressly, was not precluding Cyrano's new action

to enforce the French judgments.  Rather, he was explaining that he was not deciding whether

those judgments could be enforced after bringing a new action.  This conclusion is evident from

the phrase immediately preceding the one just quoted:  "Yet, as the French proceedings and

rulings were not considered by this court when deciding Plaintiffs' motion for default judgment,

this court's judgment does not reach the issue. . . ."  This conclusion is further evident when

Judge Tauro, in the same paragraph in his Memorandum, refers hypothetically to "a court in the

United States which decides to enforce the French judgments," despite his acknowledgement that

"a default judgment 'is as conclusive an adjudication of the issues for the purposes of res

judicata. . . .'"

Additionally, the voidable status of the U.S.-registered trademark Cyrano®, on which

Quotium base their 2002 Complaint, immunizes Cyrano's Complaint in the present matter from

the preclusive effects of the default judgment.  Cyrano only became aware that Quotium had

abandoned its rights to the Cyrano® trademark after default judgment had entered, that is, at the

hearing on April 13, 2005 during which Quotium admitted that they had not used the trademark.

Thus, Quotium's abandonment of the trademark, newly-discovered, raises separate issues with

regard to Cyrano's use of the trademark on behalf of Cyrano, S.A., the licensor, under the

Distributor Agreement. The trademark is now statutorily invalid. The USPTO is due to cancel Cyrano, S.A.'s registration of the trademark. The mandatory nature of the statute essentially provides that cancellation has already taken effect, and all that remains is for the USPTO to administer the cancellation. The time for filing the affidavit of use, as required under the statute, runs from the registration date, which has passed.

Cyrano, on the other hand, has applied to the USPTO to register the trademark for the name that they had been using for nearly a decade. Judge Tauro expressly did not order Cyrano to remove its application before the USPTO to obtain the rights it sought regarding the trademark, in recognition of the fact that Cyrano might obtain those rights, at which time the injunctive aspects of the June 8, 2005 Order "shall expire and give way." Thus, Cyrano should not be precluded from bringing its claims in the present action where this new theory on which to base its claim to the rights to the Cyrano trademark arose after default judgment had entered. Judge Tauro expressly reserved Cyrano's rights. This theory is not new in the sense that Cyrano did not raise it while litigating the earlier action; it is new in the sense that Cyrano only recently became aware of it. See Pasterczyk v. Fair, 819 F.2d 12, 14 (1st Cir. 1987) (barring a section action where plaintiff raised new theories that he did not present in first suit). Accordingly, the entry of final judgment in the earlier action should not preclude litigation of Cyrano's claims here.

The earlier court's denial of Cyrano's motion for partial summary judgment means that that court found that there were material issues of fact for a trial. The entry of final judgment in the Distributor Case and the entry of final judgment in the Logibox Case were not advanced for collateral estoppel purposes, either by a renewed motion for partial summary judgment or otherwise, in the earlier action. Judgment entered in the Distribution Case in France while

Cyrano's prior counsel's motion to withdraw was pending. When the judgment in the Logibox Case entered, prior counsel had withdrawn and Cyrano had no counsel to raise the issue in such a motion.

While it is true that Cyrano's migration from "Cyrano, Inc." to "Vedant, Inc." seemingly makes Cyrano's current application to the USPTO meaningless, that application, and Judge Tauro's sanctioning of it viz-a-viz Quotium's failure to perfect its own rights to the mark before the USPTO, represents the viability of Cyrano's challenge to the validity of "Cyrano®" as asserted in Quotium's 2002 Complaint. Thus, the issue surrounding the "Cyrano®" trademark circumvents any preclusive effect of the default judgment dismissing Cyrano's counterclaims in the earlier action.

Therefore, assuming arguendo that the claims in the present Complaint are identical to claims in the earlier action, and that the merits of the case have been adjudicated, res judicata would not apply as a result of Judge Tauro's express language in the June 8, 2005 Memorandum.

Furthermore, this enforcement claim is a claim for damages as a result of Quotium's breach of the Distributor Agreement and for damages for copyright infringement that Quotium continues to partake in. For example, Cyrano claims in the present matter that on July 11, 2005, well after dismissal in the prior action, Quotium announced QTest 4.0 (sounding strikingly similar to Test) in a clear violation of copyright infringement and of the exclusive license if the product is like QuotiumPRO (OpenSTA). Complaint at ¶ 54.

This new action is based on issues that clearly are not addressed in the February 23, 2005, default judgments. The action seeks relief for Quotium's misconduct regarding the default judgment Quotium obtained against Cyrano, including mis-certification of service, failure to disclose the French Judgments to the Court, and failure to disclose the expiration of the

trademark before the USPTO.  Thus, the Complaint here contains elements that are not part of Quotium's 2002 action against Cyrano.

This Court may look to these improprieties to defeat Quotium's argument for preclusion. See Wright § 4415 at 367 ("conduct so gross as to approach the loosely conceived theory of fraud on the court may warrant escape from ordinary preclusion consequences").  Moreover, Quotium's conduct in this regard raises issues of fact concerning Cyrano's fraud-on-the-court claim.  Quotium argue that Cyrano may not bring its claim for fraud on the court in this action. This conclusion, however, is incorrect, inasmuch as courts have recognized this cause of action. See Hazel-Atlas Glass Co. v. Hartford Empire Co., 322 U.S. 238, 246 (1944); In re Tri-Cran, Inc., 98 B.R. 609, 614-615 (D. Mass. 1989). Through the present action, Cyrano seeks to hold Quotium accountable for using the courts to destroy it.

<u>CONCLUSION</u>

For the foregoing reasons, Quotium's Motion to Dismiss or Stay should be denied.

Respectfully submitted,

Plaintiff,
**CYRANO, INC.,**
By its attorneys,

/s/ Stephen Y. Chow
Stephen Y. Chow, BBO #082990
Michael K. Sugrue, BBO #655878
PERKINS SMITH & COHEN LLP
One Beacon Street, 30th Floor
Boston, Massachusetts 02108
Dated:  October  14, 2005                    (617) 854-4000

## <u>CERTIFICATE OF SERVICE</u>

I, Michael K. Sugrue, hereby certify that a true copy of the foregoing Memorandum in Opposition to Quotium's Motion to Dismiss or Stay was served upon the following counsel of record for the Defendants by first-class mail, postage prepaid, on this the 14th day of October, 2005:

Kevin J. O'Connor, Esq.
Mayeti Gametchu, Esq.
Paragon Law Group LLP
184 High Street
Boston, MA 02110

/s/ Michael K. Sugrue_____
Michael K. Sugrue