UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CYRANO, INC.,
                    Plaintiff,

v.

QUOTIUM TECHNOLOGIES, INC.,

QUOTIUM TECHNOLOGIES, S.A.,

and

TECHNOLOGIES, S.A.,
                    Defendants.

**CIVIL ACTION NO. 05-CV-11558-DPW**

**REPLY MEMORANDUM IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS OR STAY**

Defendants Quotium Technologies, Inc., Quotium Technologies, S.A., and

Technologies, S.A. (collectively, "Quotium") submit this reply in further support of their

motion to dismiss or stay the present action commenced by Plaintiff Cyrano, Inc. ("CI").

CI's opposition ("Opp.") does not provide a single colorable reason why CI

should be allowed to relitigate the original action between the parties, C.A. No. 02-

11416-JLT ("Quotium Action). The Quotium Action was commenced over three years

ago. To date, it has involved over thirty major motions. Hundreds of thousands of

dollars in attorney fees have been spent to litigate an action which Judge Tauro found CI

willfully neglected for a year and in which it had signally failed to timely raise certain

defenses. Now, even before final judgment has entered in that action, CI has decided that

it has a right to a complete do-over in the form of the present action, as if nothing had

happened in the past three years of litigation. The words quoted in Quotium's initial

memorandum ("Mem.") apply with undiminished relevance:

> The irrationality of tolerating duplicative litigation in the federal system is all the
> more pronounced where, as here, two federal judges sitting on the same district
> court are . . . devoting scarce judicial resources to the adjudication of the same
> charges by essentially the same plaintiffs against the same defendants.

*Serlin v. Arthur Andersen & Company*, 3 F.3d 221, 224 (7th Cir. 1993)*, quoting *Ridge Gold Standard Liquors v. Joseph E. Seagram*, 572 F.Supp. 1210, 1213 (N.D. Ill.1983).

For the reasons set forth here and in Quotium's initial memorandum, the Court should grant the motion and cut short this wasteful and improper action.

## ARGUMENT

### I.    CI HAS FAILED TO SHOW THAT JUDGE TAURO DISMISSED ITS COUNTERCLAIMS WITHOUT PREJUDICE TO CI'S REFILING THEM

CI does not dispute that the dismissal of its Counterclaims in the Quotium Action was *with prejudice*, according to the terms of Rule 41(b), as Quotium has argued.  *See* Mem. at 10-11.  It speaks volumes that CI nowhere even discusses the issue.

Most of CI's opposition is taken up with examining a single passage in Judge Tauro's June 8th Memorandum (Paper #144; Exhibit 9 to present motion) ("6/8/05 Mem.").  That passage concerns the French Judgments and says nothing about the Counterclaims.  CI points to nothing there or anywhere else that changes the dismissal of its Counterclaims to one without prejudice.  This is not because Judge Tauro did not discuss the Counterclaims.  He did, and had he wished to preserve CI's right to bring them in another action, he could easily have taken the opportunity to do so.  *See* 6/8/05 Mem. at 12-13.  Instead, Judge Tauro pointedly laid the loss of the Counterclaims to CI's own deliberate neglect, and he unequivocally denied CI's request to reconsider the dismissal.  *See id*.  In addition, he rejected CI's argument that the French Judgments provide grounds to reinstate the Counterclaims—a holding that is particularly significant because CI is now trying to have the Counterclaims ride the coattails of the French Judgments in the present action.  *See id*. at 13.  In short, CI has given this Court no reason

whatsoever to believe that its refiling of the Counterclaims under a new guise should be allowed.[1]

## II.    CI HAS FAILED TO ESTABLISH ITS RIGHT TO ENFORCE THE FRENCH JUDGMENTS IN THIS ACTION

Neither the circumstances of the Quotium Action nor Judge Tauro's June 8th Memorandum supply a justification for this purported enforcement action.

### A.    No Special Circumstances Existed In The Quotium Action

As a general rule, a court may not dictate the preclusive effect of a judgment when it issues one. *See* 18 Wright & Miller, *Federal Practice and Procedure* § 4413 (2d ed. 1990). A court may, however, create an express exemption from the effect of its judgment when "special reasons" exist for doing so. *Restatement (Second) of Judgments* § 26 cmt. b (1982). While "[f]ew situations may arise" to justify this "exceptional power," it may be exercised when the "first action may not provide a suitable opportunity to resolve all parts of a single claim." 18 Wright & Miller, *supra*, § 4413. Typically, the exemption extends only to a single claim or part of a claim. *See id*; *Restatement*, *supra*, § 26 cmt. b.

None of these circumstances exist here. CI is seeking to use the French Judgments as a pretext to litigate *all* of the Quotium Action in this Court, not one claim or "specified parts" of a single claim. Wright & Miller, *supra*, § 4413. This is clear from the overwhelming similarity between CI's allegations, claims, and prayers for relief in this action compared to those in the Quotium Action. *See* Mem. at 9-10 and attached Exhibits 3-5. It is a similarity that CI's opposition does little to dispel. Critically absent from CI's opposition are citations to authorities supporting such unprecedented,

---

[1] Despite Quotium's clearly laying out the duplicative nature of the present claims and the Counterclaims, *see* Mem. at 9-10, 13-15 and attached Exhibits 3-5, CI's opposition includes only perfunctory attempts to distinguish them.

wholesale relitigation under the doctrine it invokes.[2]  *Contrast* Mem. at 12-13, 19 (citing authorities opposing wasteful, duplicative litigation).

Furthermore, no "special reasons" caused CI to be denied a "suitable opportunity" to present its case in full in the Quotium Action.  On the contrary, Judge Tauro held that CI had the opportunity and squandered it.  He found that through deliberate or willful neglect of its rights and responsibilities, CI failed to comply with a court order to retain counsel; failed to "monitor" the litigation to which it was party; failed to prosecute its claims; and failed to timely raise the French Judgments as a defense to Quotium's claims and in support to its own.[3]  *See* 6/8/05 Mem. at 9-10, 12-13.  CI cites no court decision in which a party was permitted to relitigate its entire case despite its own willful neglect of a earlier action, for which it was justly sanctioned with the loss of all its claims and with default.

In an effort to cope with these damaging facts without having to address them head-on, CI recasts its neglect as the belated discovery of a "new" theory and "new" evidence.  *See* Opp. at 11, 12-13.  This is a transparent ploy.  There is no "new" theory. CI long knew of the French Judgments.  The dates of the judgments are September 19, 2003 and March 16, 2004.  *See* Complaint ¶¶ 36, 41.  Yet CI called them to Judge Tauro's attention only in February 2005, after default.  *See* 6/8/05 Mem. at 9.  Thus, this

---

[2] That CI believes that the supposed *res judicata* exemption extends to *all* of its claims in the Quotium Action is shown by the fact that it never identifies a single claim that *will be* precluded by a final judgment in that action.  Conversely, CI has already gone on record that the French Judgments enable it to defeat *all of Quotium's claims* from the prior action.  *See* Mem. at 18 (citing CI's statements).  Thus, CI envisions this action as a complete relitigation of the past three years.

[3] CI appears to believe that, on a motion to dismiss, its allegations must be taken as true even when they controvert judicial findings made in the neighboring courtroom.  CI is wrong in this assumption.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (on motion to dismiss, court need not accept as true allegations contradicted by matters subject to judicial notice or by attached exhibits); *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (same).  *See also Kowalski v. Gagne,* 914 F.2d 299, 305 (1st Cir.1990) ("It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand."); *Boateng v. InterAmerican University, Inc*., 210 F.3d 56, 60 (1st Cir. 2000) (court may consider matters of public record, including documents from prior adjudications, without converting motion to dismiss to motion for summary judgment).

is clearly *not* a case in which a party, despite the exercise of reasonable diligence, was unable to avail itself of a legal theory during initial litigation.  *See* Wright & Miller, *supra*, § 4413 (exemption from judgment may be appropriate when party was "*justifiably unaware* of another theory") (emphasis added).

CI also declares that the lapse in Quotium's registration of the Cyrano® trademark forms the basis of a "new" theory for its claim of ownership of the mark.  *See* Opp. at 13.  CI neglects to mention that the agreement which it seeks to enforce under Count IV expressly provides that CI will never challenge Quotium's ownership of the mark and that, if CI "is deemed in law" to be the owner, it "shall assign such registration to [Quotium]."  *See* International Distributor Agreement § 10.3.2, attached as Exhibit A to Complaint; Complaint ¶ 44 (Quotium is successor in interest to Cyrano, S.A.'s rights in agreement).  Thus, the document CI appends to the Complaint as a valid contract negates CI's "new" theory of ownership.  *See Associated Builders, Inc. v. Alabama Power Co*., 505 F.2d 97, 99 (5th Cir. 1974) (on motion to dismiss, when facts disclosed by exhibit to complaint foreclose recovery as matter of law dismissal appropriate), cited by *Correa de Jesus v. U.S*., No. 90-1423, 1990 WL 254094, *3 (1st Cir. November 27, 1990); *Gant v. Wallingford Bd. of Education*, 69 F.3d 669, 674 (2nd Cir. 1995) (same); *Hamilton v. O'Leary*, 976 F.2d 341, 343 (7th Cir. 1992) (same).

Similarly, Judge Tauro has already heard the "new" evidence of Quotium's alleged trademark non-use.  *See* Paper #137 at 1 and #148 at 5-7 (motion denied by electronic order of 6/15/05).  Contrary to CI's claim to have only recently discovered direct evidence of this non-use, *see* Opp. at 12; Complaint ¶ 66, as long ago as *October 2002* CI submitted to Judge Tauro a letter from Quotium to its customers as evidence of

5

Quotium's discontinued use of the trademark.[4]  *See* Paper #13, Exhibit 1 (Affidavit of

Scott Almeda, Exhibit D).  *See also* CI Paper #25 (November 13, 2002) at 18.

Thus, in all respects CI had a "suitable opportunity" to make its case in the prior

action.  A less likely case of "special reasons" would be hard to imagine.  CI's wholesale

exemption from the prior judgment would eviscerate the policy rationale of *res judicata*.

"[T]here is good reason for the traditional rule that res judicata is an affirmative defense

that must be raised or lost.  A party who has . . . failed to afford the courts an opportunity

to avoid embarrassment and repetitive work may fairly be precluded from demanding that

they offer one more entry into the lists."  18 Wright and Miller, *supra,* § 4404.

### B.    CI Has Failed To Show That An Express Exemption Was Made In Its Favor

The passage in the June 8th Memorandum on which CI relies so heavily was clearly

couched as *dicta*.  Nothing there, in the June 8th Order (Paper #145), or elsewhere supports

CI's interpretation.  Because "the general rule [is] that a court cannot dictate preclusion

consequences at the time of deciding a first action," any exemptions it makes must be made

"expressly."  18 Wright & Miller, *supra,* § 4413.  Where courts have created a cognizable

exemption, the language used to create it has been direct and unambiguous, unlike that on

which CI relies.[5]

---

[4] *But cf. Imperial Tobacco Limited v. Philip Morris, Inc.*, 899 F.2d 1575, 1583 (Fed. Cir. 1990) (plans to use mark pending resolution of litigation may justify nonuse).  In connection with CI's supposed belated discoveries, it should also not be forgotten for all of 2004 CI neglected to avail itself of the opportunity to conduct discovery that would have enabled CI to confirm whether or not Quotium had used the Cyrano® mark.

[5] *See, e.g., Apparel Art Int'l., Inc. v. Amertex Enter. Ltd*., 48 F.3d 576, 586 (1st Cir. 1995) ("The dismissal is without prejudice to any legitimate execution of judgment motions which plaintiff may seek to file before Judge Pérez-Giménez [in the supplementary proceedings]"); *Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 204 F.3d 736, 743, (7th Cir. 2000) ("Finally, we wish to make absolutely clear that, while Central States cannot recover on this appeal, our decision does not preclude future recovery."), cited as preserving claims in *Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir. 2002); *Venuto v. Witco Corp*, 117 F.3d 754, 758 (3rd Cir. 1997) (finding sufficient district court's statement that denial of motion to add claim was "without

Moreover, when the passage is read *in context*, the interpretation for which CI advocates appears highly implausible. In the June 8th Memorandum CI was repeatedly found to have conducted its defense in the Quotium Action with willful and deliberate negligence, including, specifically, its unexcused failure to timely raise the affirmative defense supposedly provided by the French Judgments. *See* 6/8/05 Mem. at 8-10, 11, 13. Nothing in the authorities cited by CI provides a precedent for a party in CI's situation being allowed to litigate, in a second action against the same party, an affirmative defense that its deliberate and willful negligence lost it in a first action. Yet, that is what CI is suggesting was done for its benefit in this passage.

The passage falls particularly short of being a "express" authorization for the present action when one bears in mind that CI clearly intends to relitigate the *whole* of the Quotium Action in this suit, and not a claim or "specified parts" of a claim. Wright & Miller, *supra*, § 4413. If this truly were Judge Tauro's intention, one would reasonably expect him to express some recognition of the sheer scope of the exemption he was granting CI. Yet he does not. CI's repetition of the word "express" in its opposition cannot establish the contrary by incantation.

As Quotium has argued already, Judge Tauro "expressly" did *not* reach the issue of whether the French Judgments remained enforceable in a later action, a position completely in accord with the "general rule" that a court will not dictate the preclusive effect of its own judgment. Wright & Miller, *supra*, §4413. At most, he left it to this Court to decide. For the reasons set forth by Quotium in support of its motion, this Court

---

prejudice"); *King v. Provident Life and Acc. Ins. Co.*, 23 F.3d 926, 928-929 (5th Cir. 1994) (finding sufficient district court's statement that "[p]laintiffs, of course, retain the right to file another lawsuit with regard to this claim.").

should find that when CI lost the French Judgments as an affirmative defense in the

Quotium Action, it lost those judgments for all purposes in this action against Quotium.

### C.     CI Offers Further Evidence Of Its Willful Neglect

CI's opposition confirms the correctness of Judge Tauro's finding of willful

neglect.  CI admits that it failed to raise the French Judgments "for collateral estoppel

purposes . . . either by a renewed motion for partial summary judgment or otherwise."

Opp. at 13.  As an excuse, CI claims—falsely—that it was without counsel when the first

judgment was issued.  *See id*. at 13-14.  The judgment issued September 19, 2003.  *See*

Complaint ¶ 41.  CI's counsel filed a motion to withdraw on December 10, 2003 (Paper

#92) and was granted leave to withdraw on February 10, 2004  (Paper #94).  Thus, for

five months while still represented by counsel, CI did *nothing* to preserve its rights under

a supposedly dispositive judgment.  Then, for *one year* thereafter, CI knowingly kept

itself disabled from litigating any claim or defense by its failure to retain successor

counsel.[6]  This self-inflicted wound has not stopped CI, since its default in February

2005, from going around, cup in hand, asking for sympathy, first from Judge Tauro, then

from the First Circuit, and now from this Court.[7]

---

[6] During the February 10, 2004 hearing on counsel's motion to withdraw, the following exchange took place between Judge Tauro and CI's CEO.  *See* Exhibit A (Paper #167) at 4 (emphasis added), attached here.

| | |
|---|---|
| The Court: | . . . . *Corporations have to be represented by counsel.  So you have to get another lawyer*. |
| Mr. Almeda: | *Understood*. |
| The Court: | Okay.  So when will you get one? |
| Mr. Almeda: | Right now I am looking at a 30-day window. . . . |
| The Court: | . . . . So you say March 10th, assuming it is a working day? |
| Mr. Almeda: | Yes. |
| The Court: | You can hire somebody and bring them in or her in? |
| Mr. Almeda: | That would be correct. |

That exchange was the last time CI participated in the action until *February 2005*.  Remarkably, CI asserts that it was *Quotium* whose participation in the litigation lagged in 2004.  *See* Opp. at 7, 8.  Obviously, what stymied Quotium's ability to litigate was CI's ongoing lack of representation.

[7] In the Opposition and elsewhere, CI has hinted that it *intended* to bring the Quotium Action to a halt in 2004.  *See* Opp. at 8 (clearly conceding that CI could have found an attorney in 2004 for the purpose of

### III. CI'S FRAUD ON THE COURT THEORY
### REMAINS UNTENABLE AS A CLAIM AND SHOULD BE DISMISSED

As Quotium expected, CI has found no legal authority to establish the existence of this claim for money damages. CI cites two cases, and in both the only relief sought and granted was *vacating the judgment*. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 239, 251 (1944); *Tri-Cran, Inc. v. Fallon (In re Tri-Cran, Inc.)*, 98 B.R. 609, 611 (Bankr. D. Mass. 1989). The savings clause of Fed. R. Civ. P. 60(b) says an independent action may be brought to *vacate a judgment*—it does not create a money-damages tort. *See* Mem. at 22-23 (citing cases).

As Quotium has shown already, CI has brought the alleged facts to Judge Tauro's attention, and lost. *See* Mem. at 23-24. In its opposition, CI fails to explain the basis on which this Court is being asked to ignore findings made by Judge Tauro. *See Geo. P. Reintjes Co., Inc. v. Riley Stoker Corp.*, 71 F.3d 44, 49 (1st Cir. 1995) ("Rule 60(b) does not license a party to relitigate, whether via motion or independent action, any 'issues that were made or open to litigation in the former action where he had a fair opportunity to make his claim or defense'"), citing 7 Moore, *Federal Practice*, ¶ 60.37. Once again, CI is silent when candor requires it to make disclosure to this Court and offer an explanation.

Furthermore, CI only half-heartedly contests Quotium's argument that the factual allegations are insufficient to state a claim for *any* form of relief. Leaving aside the allegations that Judge Tauro already disposed of, *see* 6/8/05 Mem. at 10-11, 13, the allegations that remain are frivolous. As pled, they are not even remotely connected with

---

*opposing* a motion to *reopen* the action when it was dismissed); Complaint ¶¶ 28, 97(a) (same); Paper #148 at 4 (clearly indicating CI could have found an attorney in 2004 to bring the French Judgments to the court's attention "if it knew the proceedings were continuing here"). Mr. Almeda has also attested that during this period CI maintained nine employees on its payroll. *See* Paper #114, Exhibit A ¶ 14. The implication of these statements directly contradicts CI's undocumented lament that it could not afford counsel in 2004.

the alleged harm.  The alleged error in the date of a conferral and the alleged misrepresentation of a statement of counsel—which both supposedly "kept Judge Tauro from considering the effect of the French Judgments" and the validity of the trademark registration, *see* Complaint ¶ 34(a) and (b)—occurred *one to four weeks after* the June 8th Memorandum in which Judge Tauro dealt with the French Judgments and the trademark issue, *see id.* (dates of incidents June 16 and July 6).  *See also* Fed. R. Civ. P. 9(g) (for testing sufficiency of pleading, averments of time are material).  Moreover, Quotium has demonstrated that CI brought the issue of the French Judgments and trademark registration to Judge Tauro's attention repeatedly.  *See* Mem. at 18-19, 20-21.  Judge Tauro simply found that CI had slept on its rights and did not deserve the relief it requested.  CI has been attempting to rewrite history ever since.

For these reasons and those set forth in Quotium's opening brief, this "claim" constitutes repetitious, vexatious, and frivolous litigation, and should be dismissed.

## IV.    <u>CI FAILS TO ADDRESS THE PROPRIETY OF A STAY</u>

In its opposition, CI fails to address the relationship between this action and its appeal of the Quotium Action to the First Circuit, although this action is inextricably connected with what was decided in the earlier action.[8]  In the appeal, for example, CI is seeking review of both the dismissal of its Counterclaims and the issue of Quotium's alleged fraud on the court, both of which are major issues in this action for the reasons set forth above.  *See* Issues C and E in Defendant-Appellant's Statement of the Issues for Review and Designation of the Contents of the Appendix, attached as Exhibit 2 to Quotium's motion.  Indeed, CI is seeking review of virtually the *entire* Quotium Action.

---

[8] The appeal is styled *Technologies, S.A. and Quotium Technologies, S.A. v. Cyrano, Inc.*, Appeal No. 05-1901.

Quotium has filed a motion to dismiss all but two orders from review, CI opposed, and the motion remains pending, so that the actual scope of review is uncertain at this time. In light of all of these facts, whether this Court decides to dismiss only *some* of CI's claims or *none* of them, Quotium respectfully submits that a stay would be appropriate until resolution of the Quotium Action.

## CONCLUSION

For all of the foregoing reasons and for the additional reasons set forth in Quotium's opening brief, the Court should grant the present motion.

Respectfully submitted,

QUOTIUM TECHNOLOGIES, INC.,
TECHNOLOGIES, S.A., and
QUOTIUM TECHNOLOGIES, S.A.,
By their attorneys,


/s/ Kevin J. O'Connor
Kevin J. O'Connor (BBO# 555250)
Mayeti Gametchu (BBO# 647787)
John Pagliaro (BBO# 634483)
PARAGON LAW GROUP, LLP
184 High Street
Boston, MA 02110
DATED: October 27, 2005          Tel. (617) 399-7950

### Certificate of Service

I certify that on October 27, 2005, I served a copy of the foregoing reply by first class mail, post paid, on Michael Sugrue, counsel of record for the Defendant Cyrano, Inc.

/s/ John R. Pagliaro
John R. Pagliaro


0004-003-102223

# EXHIBIT A

to
**REPLY MEMORANDUM IN SUPPORT
OF DEFENDANTS' MOTION TO DISMISS OR STAY**

*Cyrano, Inc. v. Quotium Technologies, Inc. et al.*, C.A. No. 05-11558-DPW

1

```
 1          UNITED STATES DISTRICT COURT
            DISTRICT OF MASSACHUSETTS
 2
     * * * * * * * * * * * * * * *
 3   TECHNOLOGIES, S.A.,        *
     et al              *
 4        Plaintiffs,     *
                    *
 5        vs.         *    CIVIL ACTION
                    *    No. 02-11416-JLT
 6   CYRANO, INC.          *
          Defendant.      *
 7   * * * * * * * * * * * * * * *


 8          BEFORE THE HONORABLE JOSEPH L. TAURO
              UNITED STATES DISTRICT JUDGE
 9             MOTION HEARING


10   APPEARANCES


11          PARAGON LAW GROUP LLP
            184 High Street
12          Boston, Massachusetts 02110
            for the plaintiffs
13          By: Kevin J. O'Connor, Esq.
              Mayeti Gametchu, Esq.
14
            EDWARDS & ANGELL, LLP
15            101 Federal Street
            Boston, Massachusetts 02110
16           for the defendant
            By: Barbara L. Moore, Esq.
17             Mary Pat, Cormier, Esq.


18


19
                 Courtroom No. 20
20                 John J. Moakley Courthouse
                 1 Courthouse Way
21                 Boston, Massachusetts 02210
                 February 10, 2004
22                  10:40 a.m.


23          CAROL LYNN SCOTT, CSR, RMR
            Official Court Reporter
24          One Courthouse Way, Suite 7204
            Boston, Massachusetts 02210
25             (617) 330-1377
```

2

| | |
|---|---|
| 1 | PROCEEDINGS |
| 2 | THE CLERK: All rise. |
| 3 | THE COURT: Good morning. Sorry to keep you |
| 4 | all waiting. |
| 5 | THE CLERK: This is civil action No. 02-11416, |
| 6 | Technologies S.A. versus Cyrano, Inc. |
| 7 | Would counsel please identify yourself for the |
| 8 | record. |
| 9 | MR. O'CONNOR: Yes, Your Honor. Kevin |
| 10 | O'Connor from the Paragon Law Group for the plaintiffs |
| 11 | Technologies, S.A., Quotium Technologies, S.A. and defendant |
| 12 | in counterclaim Quotium Technologies, S.A. |
| 13 | MS. MOORE: Good morning, Your Honor. I'm |
| 14 | Barbara Moore. With me is Mary Pat Cormier. We're with |
| 15 | Edwards & Angell and we are counsel for the defendant |
| 16 | Cyrano, Inc. |
| 17 | THE COURT: Okay. |
| 18 | The only reason we are here is that you want to |
| 19 | withdraw. But I don't have anything substantive before me? |
| 20 | MS. MOORE: No, Your Honor. We finally filed |
| 21 | our motion for leave to withdraw. There are two motions |
| 22 | pending but Your Honor has since we filed the motions |
| 23 | decided the other two pending motions. So they have been |
| 24 | both been decided. |
| 25 | THE COURT: Okay. Now, is the discovery |

3

1   complete in the case?  I mean, is it just ready for a trial?

2          MS. MOORE:  It is not, Your Honor.  There was

3   an injunction hearing back sometime ago.

4          One of the motions that Your Honor recently decided

5   was a motion for partial summary judgment which we had filed

6   and which you denied.

7          There has been fairly substantial document exchange

8   between the parties.  And, again, one of the motions you

9   recently granted was the motion to compel further production

10  by the plaintiff.

11         But depositions have not been taken so I would not

12  say that discovery is substantially complete.

13         The discovery is scheduled to close I believe in

14  April.

15         THE COURT:  Well, I mean, only you can tell me

16  whether you have got irreconcilable differences with your

17  client.  And I suppose it is hard to get into those issues

18  because there are attorney/client privileges that may or may

19  not be revealed.

20         MS. MOORE:  Our client is in the courtroom,

21  Your Honor.  This (indicating) is Mr. Scott Almeda who is

22  the CEO of Cyrano, Inc.

23         THE COURT:  Well, Mr. Almeda, you hear what is

24  going on here.  Your lawyer wants to withdraw from the case.

25  And that means that you have to -- you are a corporation so

4

1    you can't represent unless -- are you a lawyer?

2            MR. ALMEDA: No.

3            THE COURT: The reason I ask is that

4    individuals can represent themselves in court. Corporations

5    have to be represented by counsel. So you have to get

6    another lawyer.

7            MR. ALMEDA: Understood.

8            THE COURT: Okay. So when can you get one?

9            MR. ALMEDA: Right now I am looking at a

10   30-day window. And hopefully that's acceptable by the

11   Court.

12           THE COURT: So, in other words, this is now

13   what, February 10th. So you say March 10th, assuming that

14   is a working day?

15           MR. ALMEDA: Yes.

16           THE COURT: You can hire somebody and bring

17   them in or her in?

18           MR. ALMEDA: That would be correct.

19           THE COURT: So why don't we set up a hearing

20   for March 10th for scheduling.

21           MR. O'CONNOR: We are fine with that, Your

22   Honor.

23           We would ask that there be a corresponding

24   extension of the discovery deadline.

25           THE COURT: We will work all that out. In

5

1    other words, when we see the new lawyer, whoever he or she

2    is, we will set up a discovery schedule.

3        As a matter of fact, what would be helpful is if

4    you, maybe Edwards & Angell's last gasp in this case would

5    be to work with your client and let counsel for the

6    plaintiff know who this new lawyer is going to be.

7        And if you could get together before you came in on

8    March 10th, or whenever we are going to come back, with the

9    proposed schedule with the completion of discovery, clicking

10   it right down to a trial date if that is necessary, that

11   would be helpful. That will save you coming back yet again

12   another time.

13       MS. MOORE: We would be happy to do whatever

14   we can to assist with that transition.

15       THE COURT: All right.

16       So we will see you March 10th, is that a good day?

17       (Whereupon, the Court and the Clerk conferred.)

18       THE COURT: All right. We are going to issue

19   an order memorializing all this, setting up March 10th as

20   the plug date. If something happens and that is not a good

21   date, we will change the order. Ms. Lovett is out today.

22       If that is not a good date for you, get in touch

23   with Ms. Lovett and she will try to accommodate you.

24       MR. O'CONNOR: Great.

25       THE COURT: All right.

6

1           MR. O'CONNOR:  Thank you, Your Honor.

2           MS. MOORE:  Thank you, Your Honor.

3       (Pause in proceedings.)

4           THE COURT:  I am allowing the motion to

5   withdraw.

6           MR. O'CONNOR:  Thank you, Your Honor.

7           MS. MOORE:  Thank you, Your Honor.

8       (WHEREUPON, the proceedings were recessed at 10:45

9       a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

7

CERTIFICATE

I, Carol Lynn Scott, Official Court Reporter for

the United States District Court for the District of

Massachusetts, do hereby certify that the foregoing pages

are a true and accurate transcription of my shorthand notes

taken in the aforementioned matter to the best of my skill

and ability.

_____

CAROL LYNN SCOTT
Official Court Reporter
John J. Moakley Courthouse
1 Courthouse Way, Suite 7204
Boston, Massachusetts 02210
(617) 330-1377