UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CYRANO, INC.,<br>          Plaintiff,<br>v.<br>QUOTIUM TECHNOLOGIES, INC.<br>     et al., Defendants. | **CIVIL ACTION NO. 05-CV-11558-DPW** |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTIONS TO LIFT STAY AND AMEND COMPLAINT**

Defendants Quotium Technologies, Inc., Quotium Technologies, S.A., and Technologies, S.A. (together, "Technologies") submit this opposition to the two motions of Plaintiff Cyrano, Inc., now known as Vedant Incorporated ("Vedant"), seeking to lift the stay in this action and obtain leave to amend its complaint.[1]  *See* Papers ##40-41.

Vedant admits that it wants to clone the counterclaims it has already asserted in *Technologies, S.A. v. Vedant Incorporated*, C.A. 06-12232 DPW ("2006 USDC Action") as an amended complaint in this action.  The Court should deny Vedant's motions for the following reasons:

  i. The amendment will not eliminate the factual and legal overlap between the various actions; and
  ii. The motions are brought for the improper purpose of circumventing the effects of a possible remand of the 2006 USDC Action.

For all of the reasons set forth herein, the Court should deny both motions.

**PROCEDURAL BACKGROUND[2]**

On July 4, 2002, Vedant commenced an action against Technologies in the Commercial Court of Paris seeking a determination of copyright ownership of the software products Test and Impact ("Logibox Action").

---

[1] In August 2005, Cyrano, Inc. legally changed its name to Vedant Incorporated, the name under which it is a party to the related case before this Court, C.A. 06-12232 DPW ("2006 USDC Action").  Technologies will use the name Vedant throughout this opposition.

[2] Since Vedant's motions raise issues about the relative scope of the various legal actions the parties have engaged in, Technologies believes that it would be helpful to give the Court a global conspectus of the history of the litigation between the parties.  The overview also brings to the fore the highly duplicative, repetitious litigation practices of Vedant.

On July 12, 2002, two of the Technologies parties (Technologies, S.A. and Quotium Technologies, S.A.) commenced Civil Action 02-11416 JLT in the United States District Court for the District of Massachusetts ("2002 USDC Action"), asserting claims against Vedant concerning other software products (primarily, Workbench and Production) and the Cyrano® trademark.  Paper #1 (2002 USDC Action).

On August 19, 2002, Vedant answered and counterclaimed in the 2002 USDC Action, asserting claims based, *inter alia*, on its alleged ownership of Test and Impact.  Paper #6 (2002 USDC Action).

On October 11, 2002, Vedant filed a motion for preliminary injunction concerning its claims for Test and Impact in the 2002 USDC Action.  The district court denied the motion on December 16, 2002.[3]  Paper #11 (2002 USDC Action).

On December 16, 2002, Vedant filed an amended answer and counterclaim, joining the third Technologies party (Quotium Technologies, Inc.) as a defendant in counterclaim, and realleging claims based on Test and Impact.  It also added a request for a declaration of its ownership of Test and Impact that was similar to the declaration it was simultaneously seeking from the Commercial Court of Paris in the Logibox Action.  Paper #38 (2002 USDC Action).

On March 6, 2003, Technologies proposed a stay of the 2002 USDC Action pending the outcome of a second French lawsuit Technologies had just commenced seeking, *inter alia*, a declaration that a licensing agreement originally entered into by Vedant and Cyrano, S.A. (Vedant's former parent company and Technologies' French

---

[3] In June 2006, Cyrano would later seek to obtain from this Court a preliminary injunction identical to the one that Judge Tauro had denied Cyrano in December 2002.  In its moving papers, Cyrano recycled its preliminary injunction materials from the 2002 USDC Action for use in this action.  It did not inform the Court of the duplicative nature of the relief being sought, and it took steps to mask the earlier origins of the supporting materials it relied on.  *See* Paper #30 at 2-3 (2005 USDC Action).

predecessor in interest) was nullified as a matter of French law by the bankruptcy of Cyrano, S.A. However, Vedant opposed the suggestion, and the court did not adopt the proposal.[4] Paper #56 at 3 (2002 USDC Action).

In June 2003, Vedant moved for summary judgment on its request for a declaratory judgment concerning its alleged ownership of Test in the 2002 USDC Action. Paper #71 (2002 USDC Action). (At the time, the Logibox Action was still pending in France with a request by Vedant for the same declaration of ownership.) The court denied the motion on January 13, 2004.

At a hearing held on February 10, 2004, the district court granted Edwards & Angell's motion to withdraw as Vedant's counsel in the 2002 USDC Action and ordered Vedant's CEO, Mr. Scott Almeda, who was in attendance at the hearing, to obtain counsel by March 10, 2004. Mr. Almeda personally assured the court of Vedant's intention to comply with the deadline.

However, when the March 10th deadline came, no successor counsel had filed an appearance on Vedant's behalf, and Mr. Almeda had made no attempt to contact the court or Technologies regarding the status of efforts to retain counsel.

On March 16, 2004, the Commercial Court of Paris issued a judgment in the Logibox Action in which it ordered Technologies to pay €25,000 to Vedant for damages and €150,000 for Vedant's legal expenses. It ordered that the copies of Test and Impact held in the logibox to be delivered to Vedant, but dismissed all of Vedant's other claims, including its request for a declaration of its ownership of Test and Impact. Paper #30 at

---

[4] Contrary to the impression created by Cyrano, Paper #21 at 2 (2006 USDC Action), the filing of this French suit was entirely unrelated to Judge Tauro's denial of Technologies' motion to amend its complaint in the 2002 USDC Action. As indicated above, the French action related to an issue of French bankruptcy law, and the most efficient and appropriate forum was obviously in France.

19-20 (2005 USDC Action).  Technologies appealed certain portions of the judgment to the Court of Appeals of Paris, and Vedant—which apparently decided to litigate actively in France while entirely ignoring the 2002 USDC Action—cross-appealed on certain issues.

On October 6, 2004, nearly seven months after the March 10th deadline had passed with no word from Vedant concerning its efforts to retain counsel, Technologies filed a motion for entry of default against Vedant in the 2002 USDC Action for failure to defend, pursuant to Fed. R. Civ. P. 55(a).  Paper #100 (2002 USDC Action).  The motion was granted on November 8, 2004.

On January 27, 2005, Technologies filed a motion for entry of default judgment against Vedant as to liability, along with a motion to dismiss Vedant's counterclaims.  Papers ##105, 107 (2002 USDC Action).  The district court granted both motions on February 23, 2005.  An order of default judgment as to liability was entered against Vedant the next day, together with an order dismissing Vedant's counterclaims and an order granting Technologies injunctive relief as part of the final relief to which it was entitled.  No oppositions had been filed by Vedant.

After entry of default judgment, Vedant resumed active participation in the 2002 USDC Action through new counsel.

On June 15, 2005, after the district court denied a series of motions by Vedant intended to undo the default judgment and its consequences in the 2002 USDC Action, Vedant filed a notice of interlocutory appeal.  Paper #152 (2002 USDC Action).  Among the issues it put on appeal, Vedant specifically identified the decision to dismiss its counterclaims and the district court's refusal to remove default in light of "judgments in

French courts that defeated Plaintiffs' case." Paper #12 (2005 USDC Action), Ex. 8 (Issues C and E).

On July 25, 2005, Vedant commenced the present action, in which it pled, almost verbatim, the counterclaims that had recently been dismissed with prejudice from the 2002 USDC Action, including the request for a declaration of its ownership of Test and Impact. *See* Paper #12 at 9-10 (setting forth the similarities of allegations, claims, and relief between the two actions) (2005 USDC Action). Vedant also sought recognition of French court decisions which they claim are favorable to their position on Test and Impact and other issues.

On October 21, 2005, the Court of Appeals of Paris issued a decision in the Logibox Action. The court ordered Vedant to pay €25,000 in damages to Technologies and invalidated the earlier order that had required Technologies to pay €150,000 in Vedant's legal expenses. It otherwise upheld the judgment of the Commercial Court of Paris. Paper #30 at 20 (2005 USDC Action); Complaint (2006 USDC Action), Ex. C.

On November 3, 2005, this Court granted Technologies' motion to stay the present action, pending final judgment in the 2002 USDC Action and the outcome of any appeal. Although the Court asked the parties whether anything required immediate attention before the stay entered, Vedant requested no relief based on any French judgment, including the October 21, 2005 judgment of the Paris Court of Appeals.

On November 14, 2005, Vedant moved to stay its interlocutory appeal of the 2002 USDC Action. The Court of Appeals granted the motion on November 28, 2005.

On or about March 7, 2006, Vedant commenced an action in the Commercial Court of Nanterre against Technologies for, yet again, alleged copyright infringement of

Test and Impact ("Nanterre Action").  Paper #20 (2006 USDC Action), Ex. 1.  Among the infringing products alleged are QuotiumPro and QTest 4.0, which are also specifically pleaded by Vedant in this action as infringing products.  *Id*.; Paper #1 ¶¶ 16, 54 (2005 USDC Action).  On the face of the Nanterre Summons (*i.e*., the document that serves as Vedant's complaint), the Nanterre Action is unrestricted in geographical scope.  Paper #20 at 3-4 (2006 USDC Action).  Indeed, an expert was appointed to review the issue of infringement "throughout the world."  *Id*.

On June 20, 2006, despite the stay, Vedant filed a motion in the present action for a preliminary injunction on its claims concerning Test and Impact, as well as OpenSTA.  Paper #24 (2005 USDC Action).  It did this despite the fact that, by putting on appeal the dismissal of its Test- and Impact-related counterclaims from the 2002 USDC Action, Vedant had transferred exclusive jurisdiction over the claims to the Court of Appeals.  This Court denied the motion on October 5, 2006.

Meanwhile, on August 23, 2006, Vedant filed yet another motion to set aside the default in the 2002 USDC Action, even though Vedant's appeal of the issue had divested the district court of jurisdiction on that issue too.  Paper #216 (2002 USDC Action).  Judge Tauro denied the motion without waiting for an opposition.

On October 10, 2006, Judge Tauro issued an order awarding Technologies money damages in the 2002 USDC Action.  Paper #220 (2002 USDC Action).  During November and December 2006, the parties briefed the issues of prejudgment interest, attorney fees, and costs.  The district court's decision on these issues remains pending and is the last step to final judgment.

On December 8, 2006, Technologies filed an action against Vedant in Suffolk County Superior Court, seeking to collect on the money judgment portion of the October 21, 2005 Paris Court of Appeals judgment, which Vedant has failed or refused to pay despite due demand. Vedant removed the action to federal court (hence, the 2006 USDC Action), moved to withdraw its notice of removal, and then moved to strike its motion to withdraw the notice of removal. Paper ##1, 2, 4 (2006 USDC Action). The Court's decision on the issue of subject matter jurisdiction is pending.

On December 28, 2006, Vedant answered and counterclaimed in the 2006 USDC Action. Paper #12 (2006 USDC Action). In its counterclaims, Vedant asserted claims for Test and Impact that it admitted were "largely duplicative" of its claims in the 2005 USDC Action, including yet another request for a declaratory judgment of copyright ownership of those two software programs.[5] *Id*. at 5. Vedant admitted the counterclaims are also "similar to and are based in part upon facts that were stated in [its] counterclaims in [the 2002 USDC Action]," which, Vedant noted, is still on appeal. *Id.*

On January 10, 2007, Vedant filed the present motions to lift the stay in this action and to amend the complaint in order to, admittedly, duplicate in this action the exact form of the counterclaims for Test and Impact that it had just asserted in the 2006 USDC Action two weeks earlier. Papers ##40-41 (2005 USDC Action).

---

[5] One of the reasons Vedant gives for duplicating claims in this way is that it wishes to "preserve Vedant's rights should this case be remanded to the state court." Paper #12 at 5 (2006 USDC Action). This is of course nonsense. A state court is entirely without subject matter jurisdiction to adjudicate copyright claims or even to determine a copyright issue. *See Lane v. First Nat. Bank of Boston*, 871 F.2d 166, 172 (1st Cir. 1989) (there exists "embargo of copyright matters from state-court jurisdiction"). Vedant's counterclaims, which are all based on copyright, cannot be preserved on remand to state court because they are legal nullities there.

**ARGUMENT**

I. **THE PROPOSED RECONFIGURATION OF THE LITIGATION WILL NOT ELIMINATE OVERLAPPING LEGAL AND FACTUAL ISSUES IN THE VARIOUS ACTIONS**

Vedant claims that the proposed amended Complaint will promote judicial economy and efficiency because it will eliminate overlaps between this action and the 2002 USDC Action and the Nanterre Action. *See* Paper #40 ¶ 13. As the account of the litigation between the parties given above indicates, there is little in Vedant's past conduct to inspire confidence when it speaks about judicial economy. In any case, the proposed amendment will not disentangle legal and factual issues among the pending suits.

    A. **Even If Amended, This Action Would Continue To Share Overlapping Issues of Fact and Law with the 2002 USDC Action**

The proposed amendment does little or nothing to sever the issues in this case from those in the 2002 USDC Action and the appeal.

Vedant admits that the proposed amended complaint is a "subset" of the current complaint in this action. Paper #41, Ex. A at 1. That admission gives cause to worry. It means that the concerns that led the Court to impose the stay would remain fully applicable even if amendment were allowed. Those concerns centered precisely on the issue of the connection of this action to the 2002 USDC Action and any appeal therefrom. The Court's original concerns were well founded. As Technologies set forth in detail for the Court in 2005, the allegations, claims, and prayers for relief in this action are almost word for word the same as those found in the counterclaims dismissed with prejudice by Judge Tauro in the 2002 USDC Action. Paper #12 at 9-10 (2005 USDC Action). Moreover, Vedant made that dismissal an appellate issue in its June 2005 interlocutory appeal to the Court of Appeals.

The amendment would not diminish the Court's grounds for concern. A glance at the table Technologies submitted earlier to the Court in the 2006 USDC Action shows a sampling of the overlap between the 2002 USDC Action, the present action (2005 USDC Action), and the counterclaims in the 2006 USDC Action, which are the same claims Vedant admits it wants to amend into this action now. *See* Paper #20, Ex, 2 (2006 USDC Action); Paper #40 ¶ 13 (amendment would make claims in present action "conform" to counterclaims in 2006 USDC Action).

Vedant claims that amending the claims in this action to limit them to acts of infringement occurring after February 23, 2005 (the date when Vedant's counterclaims were dismissed) means the action would contain only claims that "were not, and could not be, before Judge Tauro when he dismissed [Vedant's] counterclaims" in the 2002 USDC Action. Paper #41 ¶ 14. Hence, supposedly, the amendment would avoid overlap.

But Vedant is wrong in several respects. First, there is nothing whatsoever in the proposed amended complaint that limits infringements to those occurring after that date. The date is mentioned nowhere in the proposed amended complaint, and no allegations imply it in any way.

Second, the dismissal of the counterclaims is an issue Vedant has put on appeal. *See* Paper #40 ¶ 13 (dismissal of counterclaims "will be the subject of appeal"). If Vedant prevails on the issue on appeal, it will get back its counterclaims in the 2002 USDC Action, and the date of February 23, 2005 will lose legal significance. Vedant will be able to attempt to prove any and all supposed acts of infringement without regard to that date. *See* Paper #38 (Amended Answer and Counterclaim) ¶ 61 ("Technologies'

infringing activities are continuing…") (2002 USDC Action).  Thus, it is entirely premature to say, as Vedant does, that alleged infringements after February 23, 2005 never were, or could be, part of the case before Judge Tauro.  This Court has already expressed its reluctance to get out ahead of the Court of Appeals in construing the scope of the 2002 USDC Action.  As the Court stated:

> And a whole lot of what's involved here is going to be substantially influenced by what happens in the Court of Appeals, isn't it? . . . I mean, why should I let anything happen in this case until we've got some resolution in the Court of Appeals . . . Well, I think my inclination is this: To stay this until we've gotten some assistance from the Court of Appeals. . . .  Paper #19 at 16:16-18, 19:6-8, 20:3-5.

Moreover, even if the Court of Appeals does not reinstate the counterclaims to the 2002 USDC Action, there still remains the legal question, according to Vedant's own counsel, as to the preclusive effect of the dismissal of the counterclaims under Fed.R.Civ.P. 41(b).  *See* Paper #37 at 5:22-6:6.  Assuming that is true, it is all the more reason to wait for the outcome of the appeal before undertaking to redefine what is and what is not in this action.

Finally, the French judgments play a role in both the 2002 USDC Action and this action.  Vedant has sought, albeit tardily, to make these central to the 2002 USDC Action.  Vedant has said that the French judgments "cover[] all the rights at issue in this suit [i.e., 2002 USDC Action]."  Paper #114 at 3 (2002 USDC Action).  It has argued that "The French Judgments Should Be Recognized To Bar Quotium's Claims" and that they "vindicat[e] the rights of [Vedant]."  Paper #127 at 6, 8 (2002 USDC Action).  Vedant has already called the attention of the Court of Appeals to "judgments in French courts that defeated Plaintiffs' case."  Paper #12 (2005 USDC Action), Ex. 8 (Issue E).  At the same time, Vedant has also sought to obtain enforcement of French judgments (as it construes

them) in this action as well.  The Court has been rightly wary of letting that request proceed to fruition here before final determination of the 2002 USDC Action, saying:

> And enforcing a judgment from France seems to me to be an invitation to simply recreating the problems that are going to be sorted out in some fashion before Judge Tauro unless there's something that needs to be done now here.  Paper #19 at 22:6-10.

When Mr. Chow replied, "I think the question is how to interpret what Judge Tauro said in terms of leaving his order open to anything anyone else might do in those cases," the Court observed:

> That may be so.  I don't know if I'm going to be one of those or anyone else is.  The Court of Appeals is probably going to be an "anyone else," but I'm not sure that I should be and I'm certainly not sure I should be until I see what transpires in this case.  Paper #19 at 22:15-20.

Amending the complaint does not lessen the reasons for caution because, in the proposed amended complaint, Vedant still seeks enforcement of its view of a French judgment for the same purpose as in the 2002 USDC Action.  Paper #41, Ex. A ¶¶ 29-33.  In this respect, too, the proposed amendment, once examined, proves unable to disentangle this action from the 2002 USDC Action.

In short, in arguing for lifting the stay and amending the complaint, Vedant is getting far ahead of what we reliably know about the final disposition of the 2002 USDC Action.

### B.   Even If Amended, This Action Would Continue To Share Overlapping Issues of Fact And Law With The Nanterre Action

The Nanterre Action, which was transparently commenced by Vedant to circumvent the stay in this action, also cannot be distanced from this action by the amendment.

Again, the Court is invited to review the table, previously provided, comparing this action, the Nanterre Action, and the 2006 USDC Action (where Vedant's counterclaims are the claims it want to amend into this action). The table shows the present considerable overlap between this action as it stands and the Nanterre Action, as well as the overlap that would exist if Vedant's counterclaims of the 2006 USDC Action were substituted for its present claims in this action.

Moreover, as Technologies has already pointed out to the Court, contrary to Vedant's assertion that the action is limited to France, the Summons of the Nanterre Actions plainly does *not* contain any restriction on its geographical scope, and indeed the Nanterre court has appointed an expert to review the issue of Technologies' supposed infringements "throughout the world." Paper #20 at 3-4 (2006 USDC Action). Moreover, again contrary to Vedant's assertion, there is nothing in the Summons that indicates any limitation of time to after February 23, 2005. It is perfectly apparent from the allegations that the claims must extend back at least to 2002, when Technologies first put out Quotium Pro 2.0. *See* Summons at 4-5 (dating Quotium Pro 2.0), 6 (list of infringing products, including Quotium Pro 2.0), attached as Ex. 1 to Paper #20 (2006 USDC Action).

In all of these respects, the Nanterre Action overlaps this action, even as amended. The proposed amendment also contains no restriction of time, as discussed earlier, and the United States is comprehended within the unrestricted geographical scope of the Nanterre Action.

But there is another equally important way in which the Nanterre Action necessarily overlaps this action, whether amended or not. The Court adverted to the

issues generally during the October 4, 2006 hearing.  Paper #37 at 5:9-21 (2005 USDC Action).  Both actions share common factual allegations, and both center on Vedant's alleged ownership of the copyrights to Test and Impact, as illustrated by the table comparing the actions.  Hence, any determination of a common factual or legal issue made in the Nanterre Action could be asserted for its preclusive effect in this action.  The proposed amended complaint does not diminish that overlap in the least.  (In fact, Technologies would suggest that this is a large part of the reason Vedant wants to prosecute the Nanterre Action.)

Thus, Vedant's argument that the amendment would achieve judicial economy by eliminating overlap between this action and the Nanterre Action is wrong.

## II.     THE MOTION TO AMEND IS MADE FOR THE IMPROPER PURPOSE OF CIRCUMVENTING THE EFFECT OF REMAND

In light of the fact that the amendment would clearly not achieve the judicial efficiency Vedant claims for it, it is clear that Vedant is simply trying to circumvent the effects of a possible remand of the 2006 USDC Action.

Vedant's purported desire to eliminate overlap of claims in the various actions and tidy things up would only require Vedant to seek leave from the Court to amend.  It cannot explain Vedant's repeated, very specific insistence that the Court also order Technologies to answer and assert counterclaims.  *See* Paper #40 at 1, 4 (¶ 13) (2005 USDC Action); Paper #21 at 17 (2006 USDC Action).  Because of the stay put in place in this action in November 2005, Technologies has not answered the current complaint of Vedant, and in all this time Vedant has been in no way prejudiced by that fact.  Significantly, Vedant itself does not even pretend to offer the Court a reason for its sudden insistence that the Court compel an answer from Technologies.

Vedant gave the game away, however, in its recent supplemental briefing in the 2006 USDC Action. There Vedant not only announced its intention to duplicate its counterclaims there in this action (a strange enough admission by itself), but also its intention to ask the Court very specifically "*to require Technologies to assert, as a counterclaim thereto, their claims in 06-12232-DPW.*" Paper #21 at 17 (2006 USDC Action) (emphasis added). The result of this stratagem would be that all the claims of the parties now found in the removed action would be cloned exactly, claim for claim, into this action. Once that is accomplished, remand of the 2006 USDC Action largely loses its sting for Vedant. With a federal action pending that is *exactly identical* to the state suit, Vedant will be in a strengthened position to argue for a stay in state court (something it was plainly not going to get from Judge Hopkins last time it argued the issue there). And since Vedant anticipates the stay being put back in place in this action after amendment, Vedant will have successfully used federal motion practice to accomplish what it could not achieve under the law of removal—deny Technologies its chosen forum and stay Technologies' meritorious claims.

If Vedant wishes to amend, it may seek to do so *later*, at an appropriate time, *after* the numerous issues of the 2002 USDC Action has been finally determined. The amendment that Vedant is proposing now is simply a wasteful, inefficient duplication of the same claims in two actions. However much Vedant tries to present it as an efficiency measure, it is clearly undertaken for self-serving, tactical purposes. The Court should not countenance such pure gamesmanship.[6]

---

[6] The gamesmanship also extends to France. An additional factor in Vedant's efforts to fragment the copyright dispute is to avoid the possibility of a *lis pendens* being put in place in the Nanterre Action. *See* Paper #20 at 4-5 (2006 USDC Action). As discussed by Technologies in the case management recommendations it filed in the removal action, and as illustrated by the history of the litigation set forth

### III. VEDANT CONTINUES TO MISREPESENT FACTS AND LAW

At the end of its motion to lift the stay, Vedant makes several statements of law and fact to further support its notion of how amendment will enable the Court to better coordinate this case with the 2006 USDC Action specifically. *See* Paper #40 at 4-5. Since Vedant makes these points as part of its overall argument that permitting it to amend this action will lead to judicial economy and efficiency, Technologies will respond to them briefly below.

#### A. Vedant Is Wrong About Federal Jurisdiction Over The 2006 USDC Action

Vedant argues that the Court can enjoin Technologies' original state action "because Quotium already admitted that Cyrano's prior assertion of the October 21, 2005 judgment of the Court of Appeal of Paris was part of 'a **federal question case**.'" Paper #40 at 5 (2005 USDC Action) (quoting in part Technologies (Paper #30 at 21 n. 11) (emphasis in original)). Vedant concludes that "therefore," in enjoining the state action, this Court would be acting under the exception to the Anti-Injunction Act (28 U.S.C. § 2283) that permits a federal court to act in aid of its own jurisdiction. Paper #40 at 5 (2005 USDC Action). But Vedant is clearly wrong. It is true that, earlier in this action, Technologies had to remind Vedant that the jurisdictional basis of its own complaint was not diversity, but federal question, *i.e.*, copyright. *See* Paper #30 at 21 n. 11 (2005 USDC Action). In the same footnote, Technologies also made a second, separate point that should have been equally obvious to Vedant, *i.e.*, that Vedant cannot enforce its supposed intellectual *property rights* under a portion of the Paris Court of Appeals judgment by means of the Massachusetts foreign *money-judgment* statute (M.G.L. c. 235 § 23A). *See*

---

above, the entire thrust of Vedant's conduct undermines the Court's goal of rationalizing and reducing the extent of the litigation between the parties. *Id*. at 2-8. It runs up unnecessary costs and increases the risk of inconsistent rulings.

*id*.  Ever since then, Vedant has tried to rewrite the footnote into some sort of admission by Technologies that Vedant could use to bolster its arguments.  Vedant first claimed that Technologies was admitting that the judgment of the Paris Court of Appeals was not a money judgment at all.  Technologies has already called the Court's attention to this mischaracterization.  *See* Paper #6 at 6 n. 3 (2006 USDC Action).  Undeterred, Vedant has now taken to splicing the two parts of Technologies' footnote together to produce the *faux* admission by Technologies that any recognition of the Paris Court of Appeals judgment raises a federal question.  *See* Paper #40 at 5 (2005 USDC Action).  *See also* Paper #21 at 9, 12 (2006 USDC Action).

      Vedant's argument falters because it fails to distinguish between Vedant's "prior assertion" of the foreign judgment and Technologies' use of the judgment.  Clearly, any attempt by Vedant to enforce copyrights under the Paris Court of Appeals judgment raises a federal question because the claim concerns *copyright*, not because it is based on a foreign judgment as such.  Just as clearly, Technologies' attempt to collect on the *money-judgment* portion of the foreign judgment does not raise a federal question because it does *not* concern copyrights, but solely legal elements set out in a Massachusetts statute, none of which bear on copyright or any other federal issue.

      Hence, Technologies quite correctly "admitted" that what *Vedant* is attempting to do with the French judgment is part of a federal question case, *i.e.*, a copyright case.  For the same reasons, it does *not* follow that "therefore" Technologies' claims also raise a federal question and thereby give the Court federal jurisdiction.  *See also* Paper #19 at 8-

10 (2006 USDC Action). In short, Vedant's argument does not enable the Court to clear the hurdles of the Anti-Injunction Act.[7]

### B. Vedant Misstates The First-Filed Rule

According to Vedant, "*simply because* [the 2005 USDC Action] was first-filed, this Court has the power to stay" Technologies' state claims. Paper #40 at 5 (emphasis added). As support for this proposition, Vedant cites *Philip Morris, Inc. v. Harshbarger*, 946 F.Supp. 1067, 1074 (D.Mass. 1996) and *Prudential Ins. Co. v. Doe*, 140 F.3d 785, 788 (8th Cir. 1998). *See* Paper #40 at 5 n. 1 (2005 USDC Action). *See also* Paper #21 at 14 (2006 USDC Action) (quoting *Harshbarger* that Anti-Injunction Act does not apply "for the simple reason" that federal action was first filed, and citing *Prudential* as holding that Anti-Injunction Act does not bar federal declaratory judgment action filed before state action).

Vedant has misrepresented what the first-filed rule involves in the context of the Anti-Injunction Act. The issue has been succinctly summed up by the Fifth Circuit:

> Before a state court suit is filed, the Act has no application, and a federal court may enjoin parties from ever filing suite in state court. . . . A circuit split exists on the question of whether the Act has any application where *the injunction is sought before a state suit has been filed* but is not issued until after a state suit was filed. Three circuits have adopted the rule that the Act does not apply where the federal suit was filed first.

*Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 3 F.3d 877, 884 (5th Cir. 1993) (emphasis added). The significant point here—and the one Vedant fails to mention—is

---

[7] The Court of Appeals looks to the following factors to determine whether an action arises under copyright law and therefore creates federal question jurisdiction: (i) whether the complaint seeks a remedy expressly granted by the copyright act; (ii) whether the complaint asserts a claim requiring construction of the copyright act; or (iii) whether the complaint involves a distinctive policy of the copyright act that requires application of federal principles to control disposition of the claim. *See Gener-Villar v. Adcom Group, Inc.*, 417 F.3d 201, 203 (1st Cir. 2005) (further citations omitted). Applying these factors, it is easy to see why Vedant's explicit copyright claims and its reliance on supposed copyright rulings of the foreign court create federal question jurisdiction, while Technologies' claims do *not*.

that the first-filed exception applies (if at all) only where the federal suit was filed *for the purpose* of enjoining an expected state proceeding.

This is made absolutely clear in one of the two cases Vedant itself cites. In *Harshbarger*, the plaintiff tobacco companies filed a federal suit, *inter alia*, for the purpose of enjoining the Massachusetts Attorney General from commencing an "anticipated" state court action to recover Medicaid benefits from them. *See Harshbarger*, 946 F.Supp. at 1069, 1070. Three weeks later, before the injunctive relief the plaintiffs sought could be issued, the Attorney General filed the expected state action. *Id*. at 1070. In the federal action, the Attorney General argued that the Anti-Injunction Act barred the district court from issuing an injunction against the pending state suit. *Id*. at 1074. The district court rejected the argument, finding that it was sufficient that the plaintiffs had "invoked" the federal court's injunctive powers in their complaint before the state court suit was commenced. *Id*. at 1074 ("Where the plaintiff invokes the federal court's injunctive power before the state court action has commenced, the Act does not bar the federal court from granting relief."), citing *Hyde Park Partners, L.P. v. Connolly*, 839 F.2d 837, 842 n. 6 (1st Cir. 1988) (recognizing first-filed exception).[8]

But when Vedant quotes *Harshbarger* to the Court in a parenthetical, it chooses the sentence immediately before the one quoted here, so as to avoid alerting the Court that the first-filed exception recognized in the First Circuit requires that the federal action have as one of its purposes the enjoining of an anticipated state action. *See* Paper #21 at 14 (2006 USDC Action) (quoting *Harshbarger*). Vedant's reason for the selective

---

[8] "The Anti-Injunction Act . . . does not, in any event, bar injunctive relief that would run against a state court—as, in effect, would the relief ordered here . . . when the federal court's injunctive power is *invoked* (i.e., requested) by the plaintiff before the state action is commenced." *Hyde Park*, 839 F.2d at 842 n .6 (emphasis in original).

quotation is obvious. While this action was filed earlier than Technologies' state court action, Vedant's complaint in this action nowhere "invokes" the federal court's injunctive power against an "anticipated" state court action. The rule is inapplicable on such facts.

Vedant cites *Prudential* in a way that is equally misleading. *Prudential* concerned whether the issuance of a federal declaratory judgment would violate the Anti-Injunction Act or other considerations of comity if its practical effect would be to enjoin prosecution of a state court action. *See Prudential*, 140 F.3d at 788. In *Prudential* the plaintiff insurer sought, *inter alia*, a declaration that all of the claims in a state court action were preempted by ERISA, and the district court judge found that the declaratory judgment sought by the insurer *would* effectively enjoin further prosecution of the state court action. *Id*. Unlike the situation in *Prudential*, however, the declaratory relief Vedant has sought in this action has *no* bearing on Technologies' state court claims. Vedant has asked for a declaration of copyright ownership of Test, Impact, and OpenSTA and a declaration of the validity of a distributor licensing agreement. *See* Paper #1 ¶¶ 35-44 (2005 USDC Action). Neither of these requests, *even if granted*, would have the effect of interfering in any way with Technologies' state law claim for €175,000 since Technologies' claim has nothing whatsoever to do with any rights Vedant allegedly has in Test, Impact, and OpenSTA. (Nothing in the proposed amended complaint changes the analysis.) Hence, *Prudential*, like *Harshbarger*, offer no support for Vedant's arguments. The Court may *not* enjoin state court proceedings "simply" because a district court action was filed first.[9]

---

[9] Vedant also cites *First Federal Savings and Loan Association of Boston v. Greenwald*, 591 F.2d 417, 419 (1st Cir. 1979) for the proposition that a federal court may retain jurisdiction over a removed action if it contains a counterclaim under the Declaratory Judgment Act, even if the plaintiff's own claims belong back in state court. *See* Paper #21 at 11 (2006 USDC Action). Besides the fact that this proposition is counter to

## CONCLUSION

For all of the reasons set forth above, the Court should deny the motions and find that amendment is unnecessary, not conducive to judicial efficiency, and proposed for an improper purpose.

DATED: January 24, 2007            Respectfully submitted,

QUOTIUM TECHNOLOGIES, INC., and
TECHNOLOGIES, S.A.
QUOTIUM TECHNOLOGIES, S.A.,
By their attorneys,

  /s/ Kevin J. O'Connor
Kevin J. O'Connor (BBO# 555250)
Mayeti Gametchu (BBO# 647787)
John Pagliaro (BBO# 634483)
PARAGON LAW GROUP, LLP
184 High Street
Boston, MA 02110
Tel. (617) 399-7950

### Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to those indicated as non-registered participants on January 24, 2007.

  /s/ John R. Pagliaro
John R. Pagliaro

---

the holding of *The Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826 (2002), the First Circuit said no such thing in *First Federal*. What it said is that even if the state court action there were remanded, the district court would retain jurisdiction over a *separate federal declaratory judgment action* that contained claims paralleling the counterclaims asserted in the removed action, *i.e.*, the court was discussing *two* related actions, one a removal action and one an original federal suit. *See First Federal*, 591 F.2d at 422. In its discussion Vedant fails to mention existence of the original federal suit, even though it was *that* suit that was the subject of the court's holding on the issue of retaining jurisdiction.